# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. CR412-014 |
| ) | |
| RONALD E. ADKINS ) | |

## REPORT AND RECOMMENDATION

Defendant Ronald Adkins, who is charged with making threats against a federal official in violation of 18 U.S.C. § 115(a)(1)(B), moves to exclude statements he made during telephone calls to Veterans Administration ("VA") personnel, arguing that those statements are protected under the psychotherapist-patient privilege first recognized in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

At issue are two phone calls. The first, made on the evening of January 19, 2012, was to a local VA clinic, and the second, made early the next morning, was to the VA's national suicide prevention hotline. (Doc. 36-1 at 1; doc. 36-2 at 1-2; doc. 64 at 2-3 (explaining that the first call was to the local VA offices directly, rather than to the national hotline as Adkins initially claimed).) Adkins initially reached Glenda Weed, a nurse

trained in substance abuse and mental health who was working out of the Savannah VA clinic. (Doc. 36-1 at 1.) He told her that he "need[ed] someone to talk to my boss and intervene because he is being just too critical of me -- but no one will do that so I guess I will just have to take him out -- he's too rough on me and I have bad medical problems." (*Id.*) He admitted that he had been drinking and said that he "just want[ed] some help -- I plan to keep my app[ointment] with Ms. Schmitz on Monday and will ask her for help." (*Id.*) When Nurse Weed advised him that she would send someone over to give him assistance, he hung up. (*Id.*) She called the Liberty County Sheriff's Department and asked for them to conduct a welfare check and gave the officer a number to contact Dr. Steven Buffo "for after hours disposition of deputy's visit." (*Id.*) The officer couldn't locate Adkins. (*Id.*) At 6:19 a.m. the following morning, Adkins called the national suicide prevention hotline and spoke with Jennifer Wilkie for approximately 50 minutes. (Doc. 36-2 at 1.) He admitted that he was intoxicated and "stated that he would shoot his boss and himself but does not have a gun at the current time." (*Id.*) He explained that he was placed on administrative leave from his job and was

afraid he would lose it along with his housing. (*Id.* at 1-2.) He was "looking for any assistance/services that the VA can provide in the instance that he does lose his job," and he accepted a consult with a specialist in Charleston, South Carolina. (*Id.* at 2.) He again insisted that if he lost his job, he would "kill himself and his boss." (*Id.*)

Adkins claims that these calls were part of an ongoing, confidential psychotherapist-patient relationship and their content is thus privileged. (Doc. 36 at 3.) The government counters that the statements were not made to a psychotherapist or a licensed social worker and that neither of the two conversations was "made in the context of psychotherapy." (Doc. 57 at 4.) On April 18, 2012, the Court held a hearing on the matter. No witnesses were called.

All evidentiary privileges asserted in federal court are governed by Federal Rule of Evidence 501. According to the Rule, federal privilege law "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Id.* Common law privilege analysis starts with the principle that "the public has a right to every man's evidence." *United*

States v. Ghane, ___ F.3d ___, 2012 WL 752330 at *5 (8th Cir. Mar. 9, 2012) (quotations and citations omitted). Exceptions "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Applying these principles, the Supreme Court held in *Jaffe* that "reason and experience" dictate that a psychotherapist-patient privilege be recognized in the federal courts in order to foster an atmosphere of trust and confidence conducive to meaningful treatment. *Jaffee*, 518 U.S. at 10, 15. While the *Jaffee* Court did not explore all of the privilege's contours, it recognized as protected "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Id.* at 15. Additionally, because some seeking mental health treatment are unable to afford the assistance of a psychiatrist or psychologist, it held that counseling sessions with a licensed social worker enjoy the same protection. *Id.* at 16; *see also Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1158 (9th Cir. 2001) (extending the privilege to *unlicensed* employee assistance program counselors).

Here, even accepting that the calls were confidential[1] and that both Nurse Weed and Jennifer Wilkie were licensed professionals, there is no evidence that any "diagnosis or treatment" occurred. Courts have regularly rejected claims on that ground when the communications were made to a facilitator. *See Ghane*, 2012 WL 752330 at *8-9 (conversation with physician's assistant helping with hospital intake not protected); *United States v. Shwensow*, 942 F. Supp. 402, 405-408 (E.D. Wis. 1996) (conversations with alcoholism counseling volunteers were not protected). And in *United States v. Romo*, the Ninth Circuit went a step further, rejecting a claim of privilege where an inmate threatened the President during a voluntary counseling session with a licensed professional counselor upon concluding that the session did not involve therapy, diagnosis, or treatment. 413 F.3d 1044, 1047-48 (9th Cir. 2005). In reaching its result, it explained that "the privilege applies only when a therapist practices his craft, not whenever a therapist and patient communicate." *Id.* at 1048.

---

[1] While Adkins' counsel states that all calls to the suicide prevention hotline are confidential, she has not shown that a similar confidentiality guarantee applies to calls made directly to the local VA. (Doc. 64 at 3.)

5

In order to determine whether the therapist was actually practicing his craft, courts must undertake a detailed factual inquiry.[2] *Id.* at 1047. And the burden is on the party asserting the privilege to provide any supporting facts. *Id.*; *Ghane*, 2012 WL 752330 at *8; *In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 73 n.3 (1st Cir. 1999) ("As a general matter, a party asserting a privilege has the burden of showing that the privilege applies. . . . To do so, the proponent of the privilege must set forth facts sufficient to establish all the elements of the claimed privilege."). Adkins has failed to carry his burden.

---

[2] The *Romo* court explained:

> Whether a meeting occurred "in the course of diagnosis or treatment" is a factual determination that rests upon consideration of the totality of the circumstances. Relevant factors may include the historical nature of the relationship between the individual and his confidante; the patient's purpose in making the communication; the nature of the contact; the timing and location of the communication; objective data, such as medical records, which corroborate the counseling contact; and whether mental health services were provided or requested during the communication. Standing alone, the fact that a therapist has previously provided mental health care to a patient does not establish that a subsequent meeting was in the course of diagnosis or treatment. Even in the face of an ongoing patient-therapist relationship, the patient and therapist may have contacts that do not involve therapy. Thus, we pay special attention to the particulars of the meeting during which the allegedly privileged information was exchanged.

413 F.3d at 1047.

Defendant has not presented any evidence, aside from the skeletal call log summaries, suggesting that the VA employees were actually functioning as therapists. Instead, he asks the Court to infer as much since he called mental health professionals and asked for help. But the records suggest otherwise. It appears that Weed and Wilkie were simply tasked with diffusing dangerous situations and then coordinating care -- e.g., setting up appointments for therapy or calling the police to check in on callers in fragile states -- not with providing actual therapy over the phone.[3] Defendant has simply failed to meet his burden of establishing that the privilege applies.

For the reasons explained above, Adkins' motion to exclude statements (doc. 36) must be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 25th day of April, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[3] Adkins needed the testimony of Weed or Wilkie in order to properly support his claim. His counsel represented at the hearing that she was unable to secure their presence. Of course, the Court's subpoena power is sufficient to obtain the presence of even the most reluctant of witnesses.